

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-09-317-CR

JAMES EDWARD HALL                                          APPELLANT

V.

THE STATE OF TEXAS                                             STATE

------------

### FROM THE 355TH DISTRICT COURT OF HOOD COUNTY

------------

## MEMORANDUM OPINION[1]

------------

## I. Introduction

Appellant James Edward Hall appeals his sentences for two counts of aggravated sexual assault and two counts of indecency with a child. He argues in three issues that the trial court erred by failing to include a reasonable-doubt instruction concerning an extraneous offense and all of the conditions of his potential probation in the punishment charge and that the prosecutor made improper comments relating to his right against self-incrimination. We affirm.

---

[1] ... *See* Tex. R. App. P. 47.4.

## II. Factual and Procedural Background

When she was three or four years old, K.M. told Appellant's wife that Appellant, her uncle, had "humped" her. Appellant's wife informed K.M.'s mother about the allegation, but no one reported it to authorities. In October 2006, K.M. told her mother that Appellant had "touched her privates and that he got on top of her." K.M. later told her mother other details of Appellant's contact with her. K.M. also told her father that she had seen Appellant naked and that Appellant had taken her clothes off.

K.M. testified at trial that she had seen a pornographic movie at her grandmother's house and had asked Appellant what "sex" was while riding in the car with him. After K.M. asked Appellant what "sex" was, he got into the back seat of the car with her and exposed his penis. He then pulled her pants off and tried to put his penis into her vagina. K.M. testified that Appellant moved "up and down" on her but was not able to penetrate her vagina because she "was too small." He also kissed K.M. with an open mouth.

K.M. also testified that Appellant had her touch his penis in the bathtub by telling her that it was her "rubber ducky" and that he put his penis into her mouth. Appellant also fondled her breasts. K.M. testified that on other occasions, Appellant "humped" her with his clothes on. Appellant told K.M. "not to tell or else" and that he was sorry. K.M. testified, however, that the abuse continued until she was approximately six years old.

In 2008, K.M. told her father that Appellant had apologized for abusing her. Her father took her to her doctor, and her doctor made a report to Child Protective Services. After the report, K.M. was examined at Cook Children's Hospital and was interviewed at the Children's Advocacy Center in Granbury. Later, Investigator Robert Young interviewed Appellant. Appellant gave a verbal and written statement; the written statement was admitted into evidence, and the video of the oral statement was presented to the jury. In the written statement, Appellant wrote that after K.M. asked him about sex, he showed her how to do it.

Appellant initially pleaded not guilty, but after the State rested its case on guilt-innocence, Appellant pleaded guilty to two counts of aggravated sexual assault and two counts of indecency with a child. The State did not present evidence at the punishment phase. Appellant called seven witnesses during punishment who testified that Appellant was diagnosed with hydrocephalic (water on the brain) at two years old, that Appellant has neurological brain damage, that Appellant's older sister sexually abused him when he was seven years old, and that Appellant would not fare well in prison.

In closing arguments, the State argued against probation and asked the jury to assess ninety-nine years' confinement. The jury found Appellant guilty; it assessed Appellant's punishment at twenty-five years' confinement and a fine of $10,000 for each count of aggravated sexual assault and twenty years' confinement for each count of indecency with a child. The trial court sentenced Appellant accordingly and ordered that his sentences run concurrently.

### III. Jury Argument

Appellant contends in his second issue that he suffered egregious harm when the prosecutor argued during closing argument in the punishment phase that Appellant had shown no remorse because the argument was an improper comment on his right against self-incrimination.

The code of criminal procedure provides that a defendant's failure to testify in his own behalf may not be held against him and that counsel may not allude to his failure to testify. Tex. Code Crim. Proc. Ann. art. 38.08 (Vernon 2005). However, a complaint regarding an improper comment on the defendant's failure to testify is not preserved for appellate review if not raised in the trial court. *See Threadgill v. State,* 146 S.W.3d 654, 667 (Tex. Crim. App. 2004); *Wead v. State*, 129 S.W.3d 126, 130 (Tex. Crim. App. 2004).

Here, Appellant did not object to the prosecutor's closing argument. Thus, Appellant has not preserved his complaint for appellate review. *Threadgill*, 146 S.W.3d at 667; *Wead*, 129 S.W.3d at 129–30. And even if Appellant had preserved his complaint, it is clear from the context of the prosecutor's argument that he was referring to the testimony by Appellant's family during the punishment phase of the trial and not directly to Appellant's failure to testify. *See Howard v. State*, 153 S.W.3d 382, 385–86 (Tex. Crim. App. 2004), *cert. denied,* 546 U.S. 1214 (2006) (holding that if there is evidence in the record that supports a comment regarding the defendant's failure to show remorse, the comment is a proper summation of the evidence). We overrule Appellant's second issue.

## IV. Conditions of Probation in Punishment Charge

Appellant argues in his third issue that the trial court erred by listing some, but not all, of the statutory conditions of probation in the punishment phase jury charge.

The code of criminal procedure contains a list of conditions that may be required as part of a defendant's community supervision and provides that the list is not exclusive. *See* Tex. Code Crim. Proc. Ann. art. 42.12, § 11(a) (Vernon Supp. 2009). But, whether requested or not, a trial court is not required to include in its charge to the jury a list of statutory terms and conditions a defendant would face if the jury recommended probation. *Cagle v. State*, 23 S.W.3d 590, 594–95 (Tex. App.—Fort Worth 2000, pet. ref'd) (citing *Yarbrough v. State*, 742 S.W.2d 62, 64 (Tex. App.—Dallas 1987), *pet. dism'd, improvidently granted*, 779 S.W.2d 844, 845 (Tex. Crim. App. 1989)); *see also Flores v. State*, 513 S.W.2d 66, 69 (Tex. Crim. App. 1974) ("While it is considered good practice to enumerate in the court's charge the probationary conditions which the court may impose if probation is recommended by the jury, the failure to so enumerate the said conditions is not harmful."). Appellant cites the court of criminal appeals's decision in *Ellis v. State*, 723 S.W.2d 671, 672 (Tex. Crim. App. 1986) to support his position. But in *Yarbrough*, the court of criminal appeals approved the Dallas court's holding that a trial court's refusal to include all of the statutory conditions of community supervision in a jury charge was not reversible error. *See* 779 S.W.2d at 845. Thus, to the extent that *Ellis* stands for the proposition that trial courts must include all statutory terms of probation in the jury charge, it has since been implicitly overruled. *See id.*;

*Murdock v. State*, 840 S.W.2d 558, 570 (Tex. App.—Texarkana 1992), *vacated on other grounds*, 845 S.W.2d 915 (Tex. Crim. App. 1993).

Because the trial court was not required under applicable law to include all of the conditions of probation in the jury charge on punishment, we overrule Appellant's third issue. *See Cagle*, 23 S.W.3d at 594–95.

## V. Reasonable Doubt Instruction in Punishment Charge

Appellant contends in his first issue that it was "fundamental error and egregious harm for the [trial] court not to give a reasonable doubt instruction" in the punishment charge concerning his extraneous offenses of "humping" K.M. while clothed. We note, initially, that Appellant did not object to the charge and affirmatively stated that he had no objections to the proposed charge. Appellant's affirmative denial is the equivalent of failing to object. *See Bluitt v. State*, 137 S.W.3d 51, 53 (Tex. Crim. App. 2004).

## A. Standard of Review

Appellate review of error in a jury charge involves a two-step process. *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994); *see also Sakil v. State*, 287 S.W.3d 23, 25–26 (Tex. Crim. App. 2009). Initially, we must determine whether error occurred. If it did, we must then evaluate whether sufficient harm resulted from the error to require reversal. *Abdnor*, 871 S.W.2d at 731–32. If there is error in the court's charge but the appellant did not preserve it at trial, we must decide whether the error was so egregious and created such harm that the appellant did not have a fair and impartial trial—in short, that "egregious harm" has occurred. *Almanza v.*

6

*State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g); *see* Tex. Code Crim. Proc. Ann. art. 36.19 (Vernon 2006); *Allen v. State*, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008); *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996). Egregious harm is the type and level of harm that affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Allen*, 253 S.W.3d at 264 & n.15; *Olivas v. State,* 202 S.W.3d 137, 144, 149 (Tex. Crim. App. 2006); *Almanza,* 686 S.W.2d at 172.

In making an egregious harm determination, "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171; *see generally Hutch*, 922 S.W.2d at 172–74. The purpose of this review is to illuminate the actual, not just theoretical, harm to the accused. *Almanza*, 686 S.W.2d at 174. Egregious harm is a difficult standard to prove and must be determined on a case-by-case basis. *Ellison v. State*, 86 S.W.3d 226, 227 (Tex. Crim. App. 2002); *Hutch*, 922 S.W.2d at 171.

**B. Analysis**

**1. Error by Failing to Include Reasonable Doubt Instruction**

As shown above, the jury heard brief evidence that Appellant on occasion "humped" K.M. while clothed. Those occasions were not a subject of Appellant's indictment and were, therefore, offenses that were extraneous to those for which

7

Appellant was tried.  *See* Tex. Penal Code Ann. § 21.11 (Vernon 2005) (indecency with a child).

The State argues that the evidence that Appellant "humped" K.M. is not evidence of an extraneous offense because it was introduced during the guilt-innocence phase of Appellant's trial and article 38.37 of the code of criminal procedure makes such evidence admissible.  *See* Tex. Code Crim. Proc. Ann. art. 38.37, § 2 (Vernon Supp. 2009).[2]  Although article 38.37 provides that evidence of other acts is admissible, it does not make those other acts non-extraneous offenses as a matter of law.  *Id.*  In fact, if the defendant requests an instruction limiting the jury's consideration of the evidence to its bearing on the defendant's state of mind and the defendant's previous or subsequent relationship with the complainant, he is entitled to it.  *See id.*; *Rivera v. State*, 233 S.W.3d 403, 406 (Tex. App.—Waco 2007, pet. ref'd).  Thus, we do not agree that an act that otherwise qualifies as an extraneous offense is no longer an extraneous offense simply because article 38.37 deems evidence of the offense admissible at the defendant's trial.

---

[2] ... Section two of Article 38.37 states:

Notwithstanding Rules 404 and 405, Texas Rules of Evidence, evidence of other crimes, wrongs, or acts committed by the defendant against the child who is the victim of the alleged offense shall be admitted for its bearing on relevant matters, including:

(1) the state of mind of the defendant and the child; and

(2) the previous and subsequent relationship between the defendant and the child.

*Id.*

When evidence of extraneous offenses is presented at the punishment phase of a trial, those acts must be proven beyond a reasonable doubt. Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (Vernon Supp. 2009); *Huizar v. State*, 12 S.W.3d 479, 483–84 (Tex. Crim. App. 2000); *Allen v. State*, 47 S.W.3d 47, 50 (Tex. App.—Fort Worth 2001, pet. ref'd) ("[T]he trial court is required, when punishment phase evidence of extraneous offenses or bad acts evidence is admitted, to sua sponte instruct the jury on the reasonable-doubt standard of proof concerning the extraneous offenses and bad acts."). Although the evidence that Appellant "humped" K.M. with his clothes on was admitted during the guilt-innocence phase of his trial, the trial court erred by failing to include an appropriate instruction concerning the burden of proof pertaining to the extraneous offense when charging the jury on punishment. *See Fields v. State*, 1 S.W.3d 687, 688 (Tex. Crim. App. 1999) (holding that article 37.07 requires that extraneous offense evidence "may not be considered in assessing punishment until the fact-finder is satisfied beyond a reasonable doubt that these prior acts are attributable to the defendant"); *Allen*, 47 S.W.3d at 50 (holding reasonable-doubt instruction required for extraneous offense evidence, "regardless of whether such evidence was introduced at the guilt-innocence or punishment phase").

## 2. Appellant Did Not Suffer Egregious Harm

Having determined that the trial court erred by failing to include a reasonable doubt instruction in the punishment charge, we must still determine whether

9

Appellant suffered egregious harm by the omission. *See Almanza,* 686 S.W.2d at 171.

With the exception of the missing instruction regarding extraneous offenses, the punishment charge was substantially correct. It instructed the jury on the range of punishment, required any finding to be unanimous, and discussed Appellant's eligibility for community supervision. And the evidence, previously summarized, is strong and compelling.

As to the arguments of counsel, neither the State nor Appellant's counsel referenced the evidence that Appellant "humped" K.M. during their respective closing arguments at punishment. Instead, the State used the majority of its closing argument to ask the jury to sentence Appellant to ninety-nine years' confinement because he was not a suitable candidate for community supervision. And neither party argued or suggested that the burden of proof for the extraneous offense was any lower than beyond a reasonable doubt. Most significant, in our view, as to whether Appellant was unduly prejudiced by the error is the fact that the jury recommended sentences of, respectively, only twenty-five and twenty years of incarceration for his aggravated sexual assault and indecency convictions when the State had asked for ninety-nine years and twenty years, the maximum punishments for first and second-degree felonies. *See* Tex. Penal Code Ann. § 12.32(a) (Vernon Supp. 2009). There is no reason to believe that the jury lowered its standard beneath that of reasonable doubt.

Based on the appropriate harm standard and taking all of the above-mentioned factors into account, it does not appear that the omission of the instruction affected the very basis of the case, deprived Appellant of a valuable right, or unduly affected a defensive theory. Because we conclude that there is no egregious harm, we overrule Appellant's first issue.

## VI. Conclusion

Having overruled each of Appellant's three issues, we affirm the trial court's judgment.

ANNE GARDNER
JUSTICE

PANEL: LIVINGSTON, C.J.; DAUPHINOT and GARDNER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: August 12, 2010